**Everette Otis SHRADER, Virginia State Prisoner, # 100011**

v.

**William M. RIDDLE, Superintendent, Virginia State Penitentiary.**

Civ. A. No. 75–0168.

United States District Court, W. D. Virginia.

Dec. 19, 1975.

754

Everette Otis Shrader, pro se.

Linwood T. Wells, Jr., Asst. Atty. Gen., Richmond, Va., for defendant.

## OPINION AND JUDGMENT

DALTON, District Judge.

Everette Otis Shrader was convicted of the first degree murder of Epson Joseph Jackson Millirons in the Circuit Court of Giles County on October 18, 1972. The murder involved was a highly publicized event in Giles County. Shrader, accompanied by his companion, Glenn Duncan, allegedly drove back up in the woods where the Millirons lived, knocked on their door, shot and killed Millirons and his sister Elgia Gray Millirons, and then burned their house to the ground as part of a plot to rob them of a great deal of cash they kept at their home. Shrader was later also convicted of the first degree murder of Elgia Millirons.

Now, pursuant to 28 U.S.C. § 2254, Shrader has filed a writ of habeas corpus with this Court alleging constitutional deprivations in his conviction for the murder of Epson Millirons. Shrader's habeas corpus petition in the Elgia Millirons case was denied by this Court earlier. *Shrader v. Riddle,* 401 F.Supp. 1345 (W.D.Va.1975). Having concluded that petitioner has exhausted his state court remedies, this Court will address these numerous issues raised by petitioner:

(1) The Circuit Court of Giles County systematically excluded negroes from the grand jury and the petit jury.

(2) Virginia has an unconstitutional "statute" that excludes from jury service people with their civil rights restored by pardon or amnesty.

(3) Certain jurors were wrongly disqualified.

(4) Petitioner was not present when requested instructions to the jury were rejected by the Court.

(5) Petitioner was not allowed to appear before the Grand Jury.

(6) The Court did not allow petitioner to enter his own plea.

(7) Petitioner was deprived of testimony "in his own words".

(8) Petitioner was not afforded his full rights to discovery.

(9) Certain prejudicial exhibits were placed before the jury but never admitted into evidence.

(10) Hearsay testimony was improperly admitted.

(11) The testimony of Robert Harvell and Dr. Joseph McGuire was improperly admitted.

(12) Petitioner was ineffectively assisted by counsel and the Court failed to prevent this.

As to petitioner's first allegation, it does not appear that the petitioner raised this issue at his trial. The Virginia Rules of Court and the Virginia statute in effect at the time of petitioner's trial required this as a prerequisite to a valid objection of racial discrimination in jury selection. Rule 3A:20(e), *Rules of the Supreme Court of Virginia*; § 19.1–201, Va.Code Ann. (1950). These procedural requirements constitute an adequate and independent state ground for the refusal by this Court to hear this objection. *Parker v. North Carolina,* 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1969); see also *Spratley v. Paderick,* # 74–1326, (4th Cir. 11/25/75).

Petitioner's second allegation refers to an unconstitutional statute which excludes from jury service persons whose civil rights are restored by pardon or amnesty. After a careful search, this Court could not uncover this statute. Even if such a statute does exist, this Court has severe doubts of its unconstitutionality. It has long been accepted that the Constitution does not forbid the states to prescribe relevant qualifications for their jurors. *Carter v. Jury Commission,* 396 U.S. 320, 90 S.Ct. 518, 24 L.Ed.2d 549 (1969); *Brown v. Allen,* 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953).

A review of the trial transcript reveals that petitioner's third charge that certain jurors were improperly disqualified is totally unfounded. These jurors were disqualified for cause by the trial judge. If anything, their disqualification only made petitioner's trial more fair. Petitioner's allegations that he was not present when requested instructions to the jury were represented and that he was entitled to appear before the Grand Jury are in direct contradiction to the laws and the facts. The record reveals that petitioner was present when the instructions were given to the jury. Furthermore, a defendant has no right to appear before a grand jury. *U. S. v. Elksnis,* 259 F.Supp. 236 (S.D.N.Y.1966), cert. denied, 390 U.S. 990, 88 S.Ct. 1186, 19 L.Ed.2d 1295 (1967).

Petitioner's next two allegations also are not borne out by the facts. Petitioner waived formal arraignment and plead not guilty. His charge that he was not allowed to enter his own plea demonstrates no constitutional deficiency since he made no objection to this waiver at the time. Furthermore, the transcript reveals that petitioner testified in his case completely contradicting the charge that he was deprived of his own testimony.

Petitioner's next allegation is that he was not afforded his full rights to discovery. Petitioner maintains that he was entitled to all police and attorneys' records in the Commonwealth's possession, all documentary evidence to be used by the Commonwealth, names and addresses of witnesses, and names and addresses of institutions performing

**756**

analysis on exhibits. Petitioner makes no charge at all of any resulting prejudice from this failure to obtain this information.

 This Court knows of no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case. *Moore v. Illinois*, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972). Furthermore, the granting of a defense request for a list of adverse witnesses is a matter of judicial discretion, and a denial can be challenged only for abuse. *United States v. Hancock*, 441 F.2d 1285 (5th Cir. 1971).

 All that the Constitution requires is that the prosecution upon defense request not suppress evidence that would be favorable to the accused. Such evidence is defined as that which would be material either to the guilt or punishment of the defendant. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). For example, any evidence of a promise by the prosecutor for leniency with a witness in return for his testimony would be grounds for a new trial. *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

 In the case at hand, there was no such exculpatory material withheld. The petitioner had every opportunity to interrogate the witnesses without the necessity of any court order. Petitioner never claimed any resulting prejudice at his trial. See *United States v. Bolden*, 514 F.2d 1301 (D.C. Cir. 1975). This Court can find no constitutional error in this claim.

 Petitioner's next allegation is that several prejudicial exhibits were placed before the jury, but not admitted into evidence. Petitioner does not list these items and a review of the transcript does not reveal any such instances. The only incident similar in nature to this was the displaying to the jury of two fifty dollar bills with which petitioner allegedly paid his rent. This could have suggested that the petitioner had

recently come into a great sum of money. However, the transcript reveals that this currency was shown to the jury by petitioner's own counsel for the purpose of proving that petitioner often paid his rent with this denomination of currency. Taken in this light, this exhibit could hardly be said to be prejudicial.

 Petitioner's next two allegations raise questions of state law. Petitioner charges that hearsay evidence was mistakenly admitted and that certain witnesses should not have been allowed to testify. These alleged errors are of a character that cannot reasonably be said to involve a deprivation of constitutional rights. The role of a federal habeas corpus petition is not to serve as an additional appeal. It is only in circumstances impugning fundamental fairness or infringing specific constitutional protections that a federal question is presented. *Grundler v. State of North Carolina*, 283 F.2d 798 (4th Cir. 1960).

 These evidentiary problems do not rise to this standard. A review of the transcript reveals that petitioner suffered no extreme prejudice from the instances which he cites as hearsay testimony. Petitioner complains that the testimony of Robert Harvell should not have been admitted because Harvell did not positively identify petitioner as the man he saw at his hotel the night of the murders. This fact though does not make Harvell's testimony irrelevant for it still goes to establish that a man, in fact, did lock himself out of his hotel room that night which corroborated with the testimony of Glenn Duncan, petitioner's accomplice who testified against him at his trial. Petitioner also argues that the testimony of Dr. McGuire should not have been allowed into evidence because it verified an autopsy report made by Dr. Gable who had moved to Florida at the time. Petitioner overlooks the fact that this autopsy report had already been stipulated and thus, its accuracy was not in question. Transcript, 10/16/72, p. 32.

 Petitioner's last allegation is that he was ineffectively assisted by

counsel. Many of the charges here merely reiterate the objections already propounded by petitioner and rejected earlier in this opinion. For example, petitioner charges that his counsel should have protested the display of prejudicial items before the jury or the propounding of instructions to the jury without petitioner being in attendance. Factually, such charges are without support. Petitioner also charges that his counsel should not have stipulated the autopsy report, should have objected to certain hearsay testimony, should have brought out at trial a promise of leniency to petitioner's cohort, Glenn Duncan, and should have discovered and disclosed illegal conduct by the Giles County Sheriff in investigation of the case.

This court is not of the opinion that such actions constitute inadequacy of counsel. Mere mistakes or errors of counsel are not sufficient to establish a violation of petitioner's constitutional rights. It is only in extreme instances where the representation has been so inadequate as to make a farce of the trial that a defendant can be said to have been deprived of his constitutional rights. *Bennett v. State of Maryland,* 425 F.2d 181 (4th Cir. 1970). Petitioner's charge that his counsel ought to have elicited testimony concerning illegal conduct by the Giles County Sheriff is unfounded. There is not one shred of evidence to support the claim that such conduct took place.

From the outset of the trial it was made clear that Glenn Duncan, petitioner's accomplice who testified against him, was also being charged with murder. The trial judge brought this fact to the attention of all of the jurors. Transcript, October 16, 1972, p. 3. Thus, when Duncan testified implicating himself in the murder of the Millirons, the jurors were most certainly put on guard to accept his testimony with caution.

Petitioner employed his own attorney for his first trial. While this Court may not agree with every tactic employed by petitioner's counsel, it cannot find his representation of petitioner so derelict as to infect the trial and make it fundamentally unfair. See *Kearney v. Peyton,* 360 F.2d 589 (4th Cir. 1966); *United States ex rel. Walker v. Henderson,* 492 F.2d 1311 (2nd Cir. 1974). The Commonwealth had an overwhelming collection of circumstantial evidence against petitioner in addition to the testimony of Duncan. This Court cannot say that counsel, faced with this barrage, inadequately presented petitioner's case.

Accordingly, this petition for a writ of habeas corpus is denied and dismissed. The Clerk will please strike this case from the docket and certify a copy of this opinion to petitioner and counsel for respondent.